UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 2:93CR79 |
| ) | |
| SHAHEED KHAN ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S VARIOUS PRE-TRIAL MOTIONS**

The United States of America, by and through its attorney, Charles R. Tetzlaff, United States Attorney for the District of Vermont, responds to the numerous pre-trial motions filed by the defendant Shaheed Khan.

1. **Preliminary Statement**.

On December 16, 1993, the defendant was indicted on one count of receiving and possessing three firearms as a convicted felon. The indictment accuses Khan of receiving and possessing three .380 caliber semi-automatic pistols on November 29, 1993, after he had been convicted in Maryland of two felony crimes.

On February 14, 1994, the defendant filed a series of motions seeking discovery and the suppression of evidence. He also filed a notice of his intent to pursue an insanity defense.

2. **Facts**.

Shaheed Khan is a 22 year old resident alien from Guyana. He has been in the United States since 1986, and resides in District Heights, Maryland. In January, 1992, he was convicted in state court in Maryland of the felony crimes of breaking and

entering and theft and the misdemeanor crime of battery.[1] In the fall of 1993, Khan was enrolled as a cadet at Norwich University. He was able to attend Norwich by hiding the fact of his felony convictions from University officials.

In early November, 1993 an informant contacted the Bureau of Alcohol, Tobacco and Firearms ("ATF") and advised Special Agent Jim Mercer that Shaheed Khan, a fellow student, was dealing marijuana at Norwich University and soliciting others to purchase handguns on his behalf for resale outside the state of Vermont. With the assistance of the informant, Mercer was able to arrange a meeting with Khan, posing as an individual who could supply him with firearms. That first meeting occurred on November 19, at which time Khan negotiated with Mercer to purchase ten .380 caliber pistols in exchange for ten ounces of marijuana and $100.00 in cash.

At the same time, ATF investigators discovered that Khan had himself purchased numerous firearms from two local dealers (at least fourteen firearms in total). They also learned that Khan had solicited another Norwich University student to purchase several firearms on his behalf, paying that student for his services by providing him with marijuana.

Subsequent to their initial meeting on November 19, Khan and Mercer engaged in several telephone conversations, for the purpose of arranging the drugs for guns swap. During those

---

[1] Khan was also convicted on numerous counts of extortion, however, those convictions were overturned on appeal.

conversations, Khan advised Mercer that he was taking firearms out of the state of Vermont and selling them to raise capital for a more extensive drug dealing business. Khan advised Mercer that he was removing the serial numbers from the firearms he took out of state and that he was selling those firearms to criminals.

During a telephone conversation on November 29, Khan and Mercer agreed to meet later in the day to exchange marijuana for guns. The meeting occurred in the parking lot of the Grand Union supermarket in Northfield. During that meeting, which occurred in Mercer's vehicle, Khan advised Mercer that he did not have ten ounces of marijuana available for ten guns, as had previously been agreed. Rather, Khan offered two ounces of marijuana for three of the handguns. He then told Mercer that he would take five more handguns later that week in exchange for five ounces of marijuana. The trade of two ounces of marijuana for three handguns was made, with Khan physically taking custody of the guns, and handing over the drugs. At that point Mercer gave an arrest signal to agents monitoring the transaction by radio, Mercer's vehicle was surrounded, and Khan was arrested.

Khan's arrest occurred at approximately 8:41 p.m. Immediately after his arrest, he was placed in the front passenger seat of the vehicle of Special Agent Joseph Harrington. Shortly thereafter, Mercer and Harrington got into the vehicle. Mercer sat in the driver's seat and Harrington sat in the back seat. They backed the vehicle a short distance away

from the arrest scene, but it remained within the Grand Union parking lot and in plain view. At approximately 8:43 p.m., Mercer advised Khan of his Miranda rights which Khan stated he understood and wished to waive. That waiver was memorialized on a written Miranda form (Attachment 1).[2]

After Mirandizing Khan and receiving his waiver, Mercer made no threats or promises, apart from an assurance that if Khan was cooperative, his assistance would be brought to the attention of the United States Attorney. No promises whatsoever as to what benefit might result were made. It is important to note that when Mercer assured the defendant that his cooperation would be brought to the attention of the United States Attorney, it was not for purposes of obtaining a confession, but rather as part of an attempt to determine whether Khan could assist the agents in an investigation of the criminal activity of individuals in other states who were purchasing firearms from Khan and selling him marijuana.

Thereafter, Khan admitted that he had been purchasing firearms for resale out of state, and that he had prior felony convictions. He gave partial identifications of his marijuana source and a number of his gun customers (Attachment 2).

---

[2] On the Miranda form, Mercer recorded the time as 9:36 p.m. According to Mercer's report, the time was actually 8:43 p.m. According to Mercer and Harrington, this discrepancy resulted from Mercer's reliance on a clock inside Harrington's vehicle when he recorded the time on the Miranda form. According to Harrington, that clock does not function properly and is always wrong. Harrington recorded the time of the Miranda waiver when it was given. He recorded the time as 8:43 p.m.

Subsequent to these statements in Harrington's vehicle, Khan made no other statements to law enforcement officers.

On December 16, 1993, Khan was indicted. Thereafter, the government provided normal discovery. The defendant's notice of insanity defense and motions for discovery and suppression of evidence followed.

3. **Argument.**

    A. **The Motion to Disclose Statements of the Defendant and For Defendant's Criminal Record**.

The government has disclosed to the defendant all statements he made upon which the government will rely at trial. The defendant has also been furnished with a copy of his criminal record. Accordingly, his motion for these items is moot.

    B. **The Motion For Production of Evidence Favorable to the Defense**.

The government recognizes its obligation to disclose exculpatory evidence to the defense, and will do so in a timely manner if and when exculpatory material comes into its possession.

Characterizing as exculpatory evidence the name, address and certain background information about non-witness co-conspirators, the defendant seeks an Order compelling the government to disclose such. The government opposes this motion on the grounds that the information sought is not properly

5

characterized as Brady material.

    C.    **The Motion For an Audibility and Relevancy Hearing**.

The government intends to offer tape recordings of telephone conversations and the conversation surrounding the exchange of marijuana and handguns. We do not oppose a hearing on the question on the audibility of the tapes, however, we note that all of the conversation recorded on the tapes is quite easy to understand. It should be noted, also, that the Second Circuit has expressed a "clear preference for the admission of recordings notwithstanding some ambiguity or inaudibility, as long as the recordings are probative." United States v. Arrango-Correa, 851 F.2d 54, 58 (2d Cir. 1988). A tape recording is not inadmissible simply because some portions may be inaudible; on the contrary, "[u]nless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy the recording is admissible." Id., (quoting United States v. Bryant, 480 F.2d 785, 790 (2d Cir. 1973)).

The government opposes any pre-trial hearing on the relevancy of the tapes. Any determination as to relevancy should be deferred until the tapes are offered at trial. It is at that time that the relevance of each tape can best be assessed.

    D.    **The Motion To Produce Statements of Witnesses**.

The defendant has moved for an Order directing the

6

government to turnover Jencks Act material at least ten days prior to the trial. This application is contrary to the unambiguous text of 18 U.S.C. § 3500(b) and Rule 26.2(a) of the Federal Rules of Criminal Procedure: both of those Rules require the government to turnover witnesses' statements only after direct examination has been completed.

    The defendant argues, of course, that his application is intended to expedite the trial, by eliminating the need for delays to allow the study of discovery material produced after the direct examination of each witness. The government is not insensitive to these concerns and agrees to provide discovery material to the defendant at least one day before the witness to which such material pertains is scheduled to testify. This will provide the defense with ample opportunity to review the Jencks Act material and prepare for effective cross-examination.

    In connection with his Jencks Act demand, the defendant seeks an Order directing the government to produce copies of notes and memoranda made by the prosecutor of interviews with witnesses whom the government intends to call at trial, and any memoranda of oral statements made by witnesses. Interview notes by an Assistant United States Attorney or an investigative agent do not fall within the Jencks Act unless they purport to be verbatim records of interviews, or unless the notes have been expressly adopted as accurate by the witnesses. See e.g., United States v. Pierce, 893 F.2d 669, 674-75 (5th Cir. 1990); United States v. Valera, 845 F.2d 923, 926 (11th Cir. 1988);

United States v. O'Malley, 796 F.2d 891, 900 (7th Cir. 1986). See also, United States v. Gotchis, 803 F.2d 74, 77-78 (2d Cir. 1986). Thus, the government should not be compelled to produce that material at any time either before or during the trial.

    E.    **The Motion For Leave to File Additional Motions**.

The defendant has filed a motion for leave to file additional motions if necessary. A blanket approval in advance of the filing of pre-trial motions "for good cause shown" is an exercise in form over substance. Clearly, any motion filed out of time will be received by the Court in its discretion if good cause is shown. This motion should be denied as frivolous.

    F.    **The Motion For Notice of Intent by the Government to Rely on Other Crimes Evidence and Relevancy Hearing Pertaining to Said Evidence**.

The defendant has moved for an Order directing the government to provide notice, in advance of trial, of its intent to offer evidence of uncharged crimes as part of its case in chief. The government construes this motion as a request, pursuant to Rule 404(b) of the Federal Rules of Criminal Procedure, for notice of the general nature of such evidence the government might intend to introduce. The government agrees to comply with the dictates of Rule 404(b).

The government opposes any pre-trial hearing on the relevancy of such other crimes evidence. Any determination of relevance should be deferred until such evidence is offered at

trial. It is at that time that the relevance of the particular evidence can best be assessed.

We note that the defendant has been fully advised of the prior crimes committed by him which are known to the government. At this time, the government is not prepared to determine which of those crimes it will attempt to introduce at trial, if any. Those prior crimes consist of somewhere between fourteen and twenty prior illegal acquisitions of firearms by the defendant within very close temporal proximity to the offense charged in the Indictment. A relevancy determination on the admissibility of evidence pertaining to any or all of these prior transactions, all of which are known to the defendant, should pose very little difficulty for the Court and take very little time.

G. **The Motion For Government Agents to Retain Rough Notes.**

The government is aware of its discovery obligations under the Jencks Act and the Federal Rules of Criminal Procedure and will produce in a timely fashion any rough notes to which the defense is entitled.

H. **The Motion For Disclosure of Identity of Confidential Informants.**

The defendant seeks to discover the identity of all confidential informants that were utilized by the government during its investigation into his criminal activity. The

9

government vigorously opposes this motion.

The defendant recognizes that federal law confers on law enforcement authorities a general privilege to withhold the identity of persons who provide confidential information to government officials. See generally Roviaro v. United States, 353 U.S. 53 (1957). The defendant bears the burden of showing that he is entitled to disclosure of this otherwise privileged information. In Re: United States, 565 F.2d 19, 23 (2d Cir. 1977), cert. denied, 436 U.S. 962 (1978).

The defendant has not provided any concrete reason why the identity of confidential informants should be disclosed in this case. Thus, he has failed to satisfy his burden of overcoming the general privilege that attaches to the identity of informants.

The defendant suggests in general terms that disclosure of the identify of confidential informants is mandated by Brady v. Maryland. Apparently, he is speculating that information to be gleaned from confidential informants will exculpate him, but he fails to provide any details whatsoever which will tend to demonstrate that this is so. He has not shown that any unknown informant is a "'key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence.'" United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988), cert. denied, 489 U.S. 1089 (1989), (citation omitted).

The government reiterates its acknowledgement of the

mandates of <u>Brady</u> and its intent to provide exculpatory evidence to the defense if and when it comes into our possession. The government does not believe that any confidential informants possess exculpatory information, and therefore opposes disclosure, at this time, of the identity of confidential informants. Of course, if any informants testify at trial, Jencks Act material pertaining to any such witnesses will be turned over to the defense. Neither the Constitution nor federal law require any more expansive disclosure at this time.

### I.   **The Motion to Suppress Statement**.

The defendant has moved for suppression of any statements he made to law enforcement officers after his arrest, on the grounds that he was not properly given his <u>Miranda</u> warnings, that any waiver of his rights was not voluntary and that any statements were coerced by the government's method of interrogation. Obviously, as set forth in the Statement of Facts above, the government disagrees with the defendant's representations and a hearing will be necessary to resolve this issue. At that time, the government will demonstrate the voluntariness of the defendant's statements.

As set forth in the Statement of Facts, at approximately 8:41 p.m. on November 29, 1993, the defendant was placed under arrest by agents of the ATF. He was placed in the vehicle of one of the arresting agents. Shortly thereafter, Special Agents Mercer and Harrington entered the vehicle and backed that

11

vehicle a short distance away from the arrest scene. Approximately two minutes after the arrest, Mercer <u>Mirandized</u> the defendant, who executed a written waiver of his rights (Attachment 1). In anticipation of possibly obtaining assistance from the defendant in an investigation of his sources of marijuana and the persons to whom he had been selling firearms, Mercer told the defendant that his cooperation, if any was forthcoming, would be communicated to the United States Attorney's Office. No other promises or representations were made and no threats were made. The defendant then made a series of incriminating statements (Attachment 2).

The defendant's challenge to his inculpatory statements is twofold. First, he claims that he was not properly given his <u>Miranda</u> warnings. There is no merit to his claim. In fact, the defendant was given full and complete <u>Miranda</u> warnings, after which he made a knowing and intelligent waiver.

The defendant alternatively urges that, even if he was properly warned, his incriminating statements were the product of coercive interrogation. He observes that at the time of his arrest he was surrounded by multiple agents of the ATF, who had their weapons drawn. He asserts that he was then held in "a coercive situation for sometime," during which he was driven to the rear of a service station and both threatened and promised leniency. According to the defendant, the threats included a promise that if he did not talk, he would be immediately deported; followed by a promise that if he did make statements,

no criminal charges would be brought against him. According to the defendant, the combination of circumstances he alleges rendered his statements involuntary.

Some of the circumstances of which the defendant complains simply did not take place. As explained above, the defendant was not driven to an area behind a service station, and was not threatened or promised leniency.

In determining the voluntariness of a confession, the Court must inquire whether, in view of the totality of the surrounding circumstances -- including the accused's background and personal characteristics, the conditions of interrogation, and the conduct of law enforcement officials -- the will of the accused had been overborne. See e.g., United States v. Anderson, 929 F.2d 96, 99 (2d Cir. 1991); United States v. Mast, 735 F.2d 745, 749 (2d Cir. 1984). "[C]oercive police activity is a necessary predicate to the finding that a confession is 'not voluntary' . . . ." Colorado v. Connelly, 479 U.S. 157, 167 (1986). Only if the government obtained the statements in question by physical or psychological coercion or by improper inducement so powerful as to overpower a suspect's will should suppression be required. See Hanes v. Washington, 373 U.S. 503, 513-514 (1963).

In the instant case, Special Agents Mercer and Harrington did not employ physical or psychological coercion or improper inducement to extract the defendant's inculpatory statements. Prior to any questioning the defendant was given his full Miranda rights. He unequivocally acknowledged that he

13

understood his rights and that he would be willing to answer questions.[3]  The defendant was then questioned for only about twenty minutes.  While it is true that at the time of his arrest he was surrounded by agents with guns drawn, by the time his rights were read to him he was in the presence of only two agents, neither of whom were brandishing weapons.  There is absolutely nothing to indicate that his admissions to investigators were anything other than completely voluntary.  His motion to suppress statements should be denied.

Dated at Burlington, in the District of Vermont, this 23d day of February, 1994.

> UNITED STATES OF AMERICA
>
> CHARLES R. TETZLAFF
> United States Attorney
>
> By: John P. Tavana
> JOHN P. TAVANA
> Assistant U.S. Attorney
> P.O. Box 570
> Burlington VT 05402-0570
> (802) 951-6725
> Fed. Bar ID #000734926

"khan_pre.trl"/cmr

---

[3] We note that the defendant has had prior contact with the criminal justice system resulting in his felony convictions.

14

CERTIFICATE OF SERVICE

I, Celine Morin Rathe, do hereby certify that I have served a copy of the foregoing **Government's Response to Defendant's Various Pre-Trial Motions** on the Defendant by mailing a copy thereof to Richard Goldsborough, Esq., 95 St. Paul Street P.O. Box 902, Burlington, Vermont 05402-0902, counsel for the defendant, this 23rd day of February, 1994.

                                                Celine Morin Rathe
                                                Legal Secretary

"khan_pre.trl"/cmr